## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| STEYR ARMS, INC., *Plaintiff*, v. SIG SAUER, INC., *Defendant*. | Civil Action No. 1:17-cv-00483-JD |

### **DEFENDANT SIG SAUER, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

In accordance with Rule 6.1(e) of this Court's Supplemental Rules for Patent Cases and the Discovery Plan (Dkt. 37), as further amended and approved by this Court, Defendant SIG Sauer, Inc. ("SIG Sauer"), submits its Responsive Claim Construction Brief.

Laura L. Carroll (NH Bar No. 17444)
Eric G. J. Kaviar (*pro hac vice*)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel: 617-345-3000
Fax: 617-345-3299
lcarroll@burnslev.com
ekaviar@burnslev.com

Attorneys for Defendant SIG Sauer, Inc.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 2

   A.  Term 1: "multifunction metal part" ........................................................................ 2

   B.  Term 2: "means for supporting the trigger mechanism" ........................................ 4

   C.  Term 3: "a transverse hole which receives a shaft for connecting the housing and the multifunction metal part together" ................................................................... 7

   D.  Term 4: "a rear wall which is provided with a recess for receiving a projection" ............. 9

   E.  Term 5: "control means for locking said barrel in the barrel slide" ................................. 10

III. CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   457 F.3d 1293 (Fed. Cir. 2006) ................................................................................................ 8

*Capital Sec. Sys., Inc. v. NCR Corp.*,
   No. 2017-2368, 2018 WL 1181197 (Fed. Cir. Mar. 7, 2018) .................................................. 13

*Carotek, Inc. v. Kobayashi Ventures, LLC*,
   No. 07 CIV. 11163 NRB, 2011 WL 4056746 (S.D.N.Y. Sept. 8, 2011) .............................. 5, 11

*Chimie v. PPG Industries, Inc.*,
   402 F.3d 1371 (Fed. Cir. 2005) ................................................................................................ 6

*Every Penny Counts, Inc. v. Am. Express Co.*,
   563 F.3d 1378 (Fed. Cir. 2009) ......................................................................................... 5, 11

*Northpeak Wireless, LLC v. 3Com Corp.*,
   No. 09-CV-00602-SI, 2015 WL 5117020 (N.D. Cal. Aug. 28, 2015),
   *aff'd*, 674 Fed. Appx. 982 (Fed. Cir. 2016) ........................................................................ 5, 11

*Rivera v. Int'l Trade Comm'n*,
   857 F.3d 1315 (Fed. Cir. 2017) ................................................................................................ 4

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012) ................................................................................................ 8

*Trusted Knight Corp. v. Int'l Bus. Machines Corp.*,
   681 Fed. Appx. 898 (Fed. Cir. 2017) ...................................................................................... 13

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017) ................................................................................................ 8

I.     **INTRODUCTION**

As explained in its Opening Claim Construction Brief (Dkt. 46), SIG Sauer's proposed claim constructions are the correct constructions which should be adopted by this Court. SIG Sauer's proposed constructions are required in view of controlling Federal Circuit precedent, as well as the intrinsic and extrinsic evidence. Moreover, SIG Sauer has stated its proposed constructions for the five disputed terms[1] from claim 1 of the patent-in-suit, U.S. Patent No. 6,260,301 ("the '301 patent"), in plain English, so that those constructions will help a jury understand the claim.

In contrast, plaintiff Steyr Arms, Inc. ("Steyr"), has simply ignored controlling canons of claim construction in its Opening Claim Construction Brief (Dkt. 45). Steyr's "arguments" in support of its proposed constructions are generally little more than unstructured recitations of Steyr's view of the specification and file history. Steyr failed to present this Court with fact or law that actually supports Steyr's constructions as the correct constructions. Steyr did not, because it could not: Steyr's proposed constructions are incorrect as a matter of fact and law. Steyr's proposed constructions also make little sense in context and would only confuse the jury.

In its Opening Brief, Steyr noted in passing that the Northern District of Alabama has construed certain terms in the '301 patent in Steyr's litigation against Beretta USA Corp. The related opinion by that court ("N.D. Ala. Opinion") (Dkt. 45-2) is neither intrinsic nor extrinsic evidence. The accused Beretta products in that case differ in structure from the accused SIG

---

[1] The five terms to be construed are: (1) "multifunction metal part," (2) "means for supporting the trigger mechanism," (3) "a transverse hole which receives a shaft for connecting the housing and the multifunction metal part together," (4) "a rear wall which is provided with a recess for receiving a projection on the multifunction metal part," and (5) "control means for locking said barrel in the barrel slide." A copy of the '301 patent was attached as Exh. A to the Carroll Declaration (Dkt. 46-2) filed with SIG Sauer's Opening Brief.

Sauer products in the present case, and accordingly the parties and the court in the Alabama case have focused on different aspects of the claims.  The N.D. Ala. Opinion, as a result, does not address, or resolve, the disputes between Steyr and SIG Sauer (the "Parties") in this case.  The Alabama court also did not receive, let alone consider, the arguments, evidence, and law that SIG Sauer has provided in its briefing to this Court.  Respectfully, the N.D. Ala. Opinion is of little value to claim construction in this case—as evidenced by the fact that Steyr did not even cite its rationales or holding.  However, in the interest of completeness, portions of that opinion will be addressed in this Responsive Brief.

## II.    ARGUMENT

### a.  Term 1: "multifunction metal part"

| SIG Sauer's Proposal | Steyr's Proposal |
|---|---|
| a one-piece metal frame that serves multiple functions | A metal multifunction part removably insertable into the housing as a single part rather than individual component parts, the multifunction metal part including a projection, guides for the barrel slide, means for supporting the trigger mechanism, a transverse hole to receive the shaft for connecting the housing and the multifunction metal part together and control means for locking the barrel in the barrel slide. |

As a threshold matter, Steyr now proposes to construe the phrase "multifunction metal part *removably insertable within said housing*" (emphasis added) (Steyr Opening Brief, at 8), instead of the term the Parties agreed to construe:  "multifunction metal part."  (*See* Joint Claim Construction Statement, Dkt. 42, at 2.)  Should the Court need to construe "removably insertable …" it should do so separately from the term "multifunction metal part" and subject to further briefing.  Given, however, that Steyr's proposed construction for "removably insertable" is apparently "removably insertable," there may be no need to construe that new clause.

2

In its Opening Brief, SIG Sauer cited Federal Circuit case law requiring that the term "multifunction metal part" mean "a one-piece metal frame that serves multiple functions" because every embodiment of that part disclosed in the '301 patent is a one-piece metal frame, the '301 patent calls that one-piece metal frame "the invention," and Steyr disclaimed frames comprised of multiple parts during prosecution. (SIG Sauer Opening Brief, at 9-11.)

Steyr asserts that its construction is "supported" by the specification and then purports to summarize the allegedly supporting portions of the specification. (Steyr Opening Brief, at 8-10.) That is the total of Steyr's support for its construction of "multifunction metal part."

Steyr offers no reason, or law, to support its construction as the right construction. Indeed, Steyr cannot because its proposed construction violates the canons of claim construction cited by SIG Sauer in its Opening Brief, at 6-8. Steyr simply ignores the laws of claim construction to arrive at its proposed construction. As a result, the value of Steyr's "argument" to determining the correct meaning of the term "multifunction metal part" is minimal.

The Alabama court's claim construction opinion is similarly unhelpful to determining the correct meaning of the term "multifunction metal part." As an initial matter, the parties in that case did not ask that court to construe "multifunction metal part." When construing the limitation "housing has a real wall which is provided with a recess for receiving a projection on the metal multifunction part," however, that court had been asked by Berretta to find that the recess "can only be that which receives a projection from a unitary, or one piece multifunction metal part." (N.D. Ala. Opinion at 30.) The court did not adopt Berretta's construction, and instead found that the specification's disclosure of a metal part formed by welding individual parts together was a disclosure of something other than a one-piece part. (*Id.* at 30-31.) The

3

court reached that conclusion without the benefit of the intrinsic evidence and governing law cited by SIG Sauer in its Opening Brief, at 9-14.

Specifically, the term "one-piece" does not require a part to have never consisted of individual pieces brought together to form a single, unitary part. Just like a "one-piece bathing suit," a one-piece part can be formed of individual pieces joined together. What makes something "one-piece" is whether it is joined together in a way that breaking it into sub-parts would require destroying the part, rather than disassembling the part.

The term "multifunction metal part" is not a term of art and has no plain and ordinary meaning as a type of gun frame—as evidenced by the fact that Steyr has never argued that it has a plain and ordinary meaning, let alone introduced one in support. If this term does not refer to a one-piece frame, the claim would fail for lacking sufficient written description support, since no other type of "multifunction metal part" is disclosed by the specification. *See, e.g.*, *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017) (finding claim term rendered claim invalid for lack of written description because the specification did not teach an element covered by the claim term).

### b. Term 2: "means for supporting the trigger mechanism"

| SIG Sauer's Proposal | Steyr's Proposal |
|---|---|
| Means-plus-function limitation:<br><br>**(1) means:** a hole or other type of recess<br><br>**(2) function, i.e., for supporting the trigger mechanism:** capable of securing at least one trigger component by receiving an insert | A multifunction metal part including any desired holes and pins mounted therein such that the trigger and trigger parts are all mounted on the multifunction metal part, and equivalents thereof.<br><br>The function is to "support" or mount the trigger mechanism. Referring to the specification and drawings, the structure identified to support the trigger mechanism is the multifunction metal part including holes and pins mounted therein. |

4

As explained in Sig Sauer's Opening Brief, at 14-15, a proper construction for a means-plus-function term cannot simply recite the structure disclosed in the specification and then conclude with "and equivalents thereof." That is not a proper construction because that would leave to the jury the task of figuring out the scope of the claim, *i.e.*, what constitutes an "equivalent" in that claim. As a matter of Federal Circuit law, determining the scope of a patent claim is a task for a court, not a jury. *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009). *See Carotek, Inc. v. Kobayashi Ventures, LLC*, No. 07 CIV. 11163 NRB, 2011 WL 4056746, at *16 (S.D.N.Y. Sept. 8, 2011) (rejecting notion that "[and] equivalent structures" should be included in a court's claim construction); *Northpeak Wireless, LLC v. 3Com Corp.*, No. 09-CV-00602-SI, 2015 WL 5117020, at *7 n. 6 (N.D. Cal. Aug. 28, 2015), *aff'd*, 674 Fed. Appx. 982 (Fed. Cir. 2016) (same).

SIG Sauer's proposed construction expressly covers both the "means" disclosed in the specification as the structure for supporting the trigger mechanism, *i.e.*, multiple holes that receive pins, as well as equivalents, such as a single hole or recess that receives an insert. Under SIG Sauer's proposed construction, the jury will not be left to wonder what constitutes an "equivalent" within the meaning of the claim.

In its Opening Brief, at 14, Steyr acknowledged that the claimed "means" is not limited to the disclosed structures and includes equivalents. But Steyr's proposed construction, as well as the construction adopted by the Alabama court,[2] impermissibly leaves claim construction to the jury by failing to define such "equivalent structures." This is improper as a matter of law and

---

[2] *See* N.D. Ala. Opinion at 22-23. Again, the Alabama court was not provided with the most pertinent facts and law concerning the meaning of this claim term, and it appears to have misapplied the law on this issue.

5

Steyr has cited no authority to support leaving this determination to the jury (nor, respectfully, did the Northern District of Alabama).

In Steyr's proposed construction of "means for supporting the trigger mechanism," Steyr also seeks to limit the plain and ordinary meaning of the functional term "support" without any justification from the intrinsic or extrinsic record.

The process of claim construction begins with examining the language of the claim itself. *Chimie v. PPG Industries, Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("Claim construction begins with … looking first to the claim language itself to define the scope of the patented invention."). The term "support" means "to carry all or part." (Dkt. 46-8, Carroll Decl. Exh. G, The Concise Oxford Dictionary of Current English (9th ed. 1995), at SIG002841.) The plain language of the claim, thus, requires the "means" at issue to serve the "function" of supporting at least part of the trigger mechanism.

Steyr seeks to construe the term "support" so as to require that <u>all</u> parts of the trigger mechanism be supported, by citing a disclosed embodiment that Steyr contends depicts the trigger mechanism as mounted, completely, to the multifunction metal part. (*See* Steyr Opening Brief, at 12-14.) But Steyr curiously makes this assertion, *i.e.*, that the "support" function should be limited to the disclosed embodiment in its Opening Brief, only a few lines after admitting that the "means" portion of this limitation cannot be limited to the disclosed embodiment. (*Id.* at 12, citing 3:21-4:3.) Steyr cannot have it both ways and there is simply no indication that the term support should have the narrower meaning proposed by Steyr.

6

c. **Term 3: "a transverse hole which receives a shaft for connecting the housing and the multifunction metal part together"**

| SIG Sauer's Proposal | Steyr's Proposal |
|---|---|
| a hole, located on the left or right side of the housing, configured to receive a rod-shaped object in order to connect the housing to the multifunctional metal part. | A housing and multifunction metal part including aligned transverse holes dimensioned to receive a disassembly lever shaft, the disassembly lever shaft received in the transverse holes and the projection received in the housing recess together hold the multifunction metal part firmly in the housing |

SIG Sauer's proposed construction for the above referenced limitation tracks the requirements present in the plain language of the claim itself. The asserted claim expressly requires only a single "transverse hole," by the claim's use of the term "a transverse hole," and provides that the claim can be satisfied by any type of "shaft," by the claim's reference to the general term "shaft."

Steyr's proposed construction tries to rewrite the asserted claim. As addressed in more detail in SIG Sauer's Opening Brief, at 16-18, Steyr's construction improperly replaces the claim's requirement of "a transverse hole" with "aligned transverse holes" and replaces the requirement of a "shaft" with a specific type of shaft, *i.e.*, a "disassembly lever shaft." Steyr's construction, thus, simultaneously tries to broaden certain requirements of the claim (from one to multiple transverse holes) while narrowing others (limiting "shaft" to only one specific type).

Nothing in the specification, however, changes the plain and ordinary meaning of these terms to the meanings urged by Steyr. Nor did Steyr make any limiting admissions or disclaimers during prosecution of the '301 patent related to this limitation. This is evident from the fact that Steyr has cited no law to justify departing from the plain and ordinary meaning of the terms "a transverse hole" and a "shaft" in its Opening Brief. It would be reversible error to

adopt Steyr's construction. *E.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").

Steyr contends that the term "shaft" should be limited to one example of a shaft identified in the specification, a disassembly lever shaft, because, Steyr argues, a "disassembly lever shaft" is a well-known "term of art" that a person of skill would have recognized refers to a very specific type of shaft. (Steyr Opening Brief, at 17.) Steyr's correct observation that the term "disassembly lever shaft" is a well-known "term of art" actually leads to the exact opposite conclusion urged by Steyr, however.

Because the term "disassembly lever shaft" in the specification is so specific and well-known, Steyr's decision during patent prosecution to use a much broader term, "shaft," when writing the claim means that the term "shaft" includes, but is not limited to, a "disassembly lever shaft." *E.g.*, *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1282 (Fed. Cir. 2017) (affirming broad construction of the word "emittance" as it "includes both wired and wireless transmissions," its ordinary meaning is simply "to send out," and there was no special definition or disclaimer that changed the ordinary meaning of this term in the specification). Had Steyr wanted to limit the claim to only a "disassembly lever shaft," it would have just used that specific term instead. *E.g.*, *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1315 (Fed. Cir. 2006) ("if the patentee had wished only to limit the claims to human EPO, the patentee could have done so by continuing to use the adjective 'human' when referring to EPO").

Indeed, Steyr failed to inform the Court that in other related patent applications for the same invention, Steyr used the term "disassembly lever shaft" in patent claims when it meant to limit those claims to that specific type of shaft. (*See* examples discussed in SIG Sauer Opening Brief, at 25-27.)

8

### d. Term 4: "a rear wall which is provided with a recess for receiving a projection"

| SIG Sauer's Proposal | Steyr's Proposal |
|---|---|
| the backmost wall of the housing which contains a hollow area, formed by an indent, hole, or cut-out, which hollow area is configured to receive an insert | The multifunction metal part is provided with a projection which engages in a recess in the rear wall of the housing for the purpose of removably inserting the multifunction metal part into the housing, the disassembly lever shaft received in the transverse holes and the projection received in the housing recess together hold the multifunction metal part firmly in the housing. |

In its Opening Brief, Steyr failed to explain how its proposed construction for "a rear wall which is provided with a recess for receiving a projection" constitutes a construction. Steyr "defines" the key terms in dispute in this limitation, *i.e.*, "recess" and "projection," by simply referring back to the terms themselves, *i.e.*, "recess" and "projection." Simply repeating the terms to be construed in no way assists a jury in understanding what constitutes a recess or a projection.

The Parties' dispute concerning this limitation relates to their dispute as to whether claim 1 is anticipated, or obvious, in view of certain prior art. Should Steyr's infringement claim survive to trial (which SIG Sauer contends it should not for several reasons), a jury will be asked to look at certain prior art and determine whether that prior art teaches the claimed recess and projection, or whether that prior art discloses a different type of structure. Because Steyr has proposed nothing to assist the jury in making that determination, Steyr's proposed claim construction ignores the Parties' dispute over the scope of these terms.

Moreover, Steyr's proposed construction adds requirements uncalled for by the terms of the claim limitation. Without any justification, Steyr proposes to construe this claim limitation to include requirements already present in other parts of claim 1 and also new requirements

nowhere mentioned in the claim.  To illustrate, in the quoted language below, the additional, redundant requirements proposed by Steyr are shown in purple and bold underlining, and the new requirements are shown in red and bold:  "**the disassembly lever shaft <u>received in the transverse holes and the projection</u> received in the housing recess together hold the multifunction metal part firmly in the housing**."  There is no legitimate justification in fact or law to support Steyr's attempt to rewrite the claim.

Steyr's proposed construction is over sixty (60) words long, five times longer than the limitation being construed.  Steyr's assertion (Steyr Opening Brief. at 19-20) that such a prolix construction, which fails to define the terms in dispute, and rewrites the claim by adding new requirements, represents those claim terms' "plain and ordinary meaning" should be rejected.

e.   Term 5:  "control means for locking said barrel in the barrel slide"

| SIG Sauer's Proposal | Steyr's Proposal |
|---|---|
| Means-plus-function limitation:<br><br>**(1) means**: "control means" – a bridge-like portion of the multifunction metal part designed to engage a portion of a barrel<br><br>**(2) function:** "locking said barrel in the barrel slide" – indefinite | A bridge which spans the sides of the multifunction metal part, and equivalents thereof.<br><br>With respect to the limitation "control means for locking said barrel in the barrel slide" the function is to lock the barrel shown in Fig. 1 as reference numeral 3 in the barrel slide, reference numeral 2.  Referring to the specification and drawings, the structure identified to lock the barrel in the barrel slide is a bridge 33 provided on the multifunction metal part. |

The claim term "control means" has no plain and ordinary meaning.  To understand its meaning, we must rely upon Steyr's representations of the meaning of that term during the '301 patent's prosecution, both in its specification and in its file history.  As discussed in more detail in SIG Sauer's Opening Brief, at 19-26, and below, that intrinsic evidence supports that the "control means" must be construed to mean "a bridge-like portion of the multifunction metal part

10

designed to engage a portion of a barrel." That is the only structure disclosed in the specification under this means-plus-function limitation, and Steyr disclaimed other equivalents to secure allowance of its claim over prior art. (*Id.*)

Steyr's proposed construction for "control means" cannot be adopted for several independently sufficient reasons. To start, adopting Steyr's construction would again impermissibly leave claim construction to the jury, by requiring the jury to determine the applicable range of "equivalents." *Every Penny*, 563 F.3d at 1383; *Carotek*, 2011 WL 4056746, at *16; *Northpeak Wireless*, 2015 WL 5117020, at *7 n. 6.

Steyr's proposed construction also does not address the underlying dispute between the Parties under this limitation: whether a removable pin in the accused SIG Sauer products, and found in the prior art, can constitute the claimed "control means." Indeed, Steyr appears to have designed its construction to obfuscate the Parties' dispute under this limitation, presumably to help it try to avoid summary judgment and get to a jury.

Steyr has, however, admitted, repeatedly, that the claimed control means does not include such removable pin-like structures. Steyr specifically disclaimed such a removable structure during prosecution of the '301 patent to overcome prior art (*see* SIG Sauer Opening Brief, at 22-25) and admitted to another governmental patent authority in connection with a related patent that the control means cannot include a removable pin, once again to avoid invalidity because of certain prior art (*see id*. at 25-27).

In its Opening Brief, Steyr ignores these aforementioned events. Instead, and without any case citation, Steyr simply insists that its proposed construction is consistent with Steyr's summary of purportedly supportive sections of the '301 patent's specification. Once again, Steyr has not presented any reason why its construction is the correct construction based on the

11

controlling law and the relevant intrinsic and extrinsic evidence. Steyr cannot obtain a claim construction based on its own "say so" and in a vacuum devoid of Federal Circuit law and intrinsic and extrinsic evidence.

Steyr tacitly admits that the claimed function of "locking said barrel in the barrel slide" has no plain and ordinary meaning, since Steyr has not argued that it has one. Steyr also does not dispute that the '301 patent's specification neither uses the term "locking said barrel in the barrel slide" nor specifically explains how to lock a barrel in the barrel slide or even what having a barrel locked in a barrel slide means.

Instead, Steyr appears to rely, entirely, on Figure 1 of the '301 patent, which Steyr contends somehow depicts a control means that has locked the barrel in the barrel slide. (Steyr Opening Brief, at 23.) Steyr cites no law to support its argument on this point, nor does it cite any intrinsic or extrinsic evidence to suggest that a person of ordinary skill at the time of the invention could look at Figure 1 and understand what "locking said barrel in the barrel slide" means, let alone how the claimed "control means" accomplishes such a function. Indeed, while barrel (3) and barrel slide (2) are both identified in Figure 1, the "control means" (33) (identified in the '301 patent at 3:1) nowhere appears in that figure. Instead, the "control means" (33) only appears in Figures 5 and 6, neither of which depicts either a barrel (3) or barrel slide (2).[3]

---

[3] In Figure 1 of the '301 patent, "control means" (33) is not specifically identified. *See* '301 patent, attached as Exh. A to Carroll Decl. (Dkt. 46-2). Steyr's annotated version of Figure 1 in its Opening Brief (at 21), however, added a line and the number 33 in similar style as in the original Figure, together with the words "Second Bridge (Control Means)." It appears that the same annotation of Figure 1 was presented by Steyr to the Alabama court, given that court's statement that, "[a]s explained by Steyr in its brief, Figures 1 and 6 show that the second bridge (33) is shaped to interact with the control attachments (4) on the barrel (3)," citing Steyr's brief in that case. (N.D. Ala. Opinion at 28.) Figure 1 of the actual '301 patent does not, however, identify (33), nor does Figure 6 identify either (3) or (4).

12

Accordingly, the term "locking said barrel in the barrel slide" is indefinite because it is unclear what this limitation actually means and requires. *E.g.*, *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 2017-2368, 2018 WL 1181197, at *6 (Fed. Cir. Mar. 7, 2018) (affirming district court's holding that a claim term rendered claim indefinite where "its scope is unclear in view of the intrinsic evidence"); *Trusted Knight Corp. v. Int'l Bus. Machines Corp.*, 681 Fed. Appx. 898, 903 (Fed. Cir. 2017) (similar).

### III.    CONCLUSION

For all of the reasons set forth above and in its Opening Brief, SIG Sauer respectfully requests that the Court adopt SIG Sauer's proposed constructions, including by holding Claim 1 invalid for being indefinite.

Dated:  June 25, 2018                                            Respectfully submitted,

                                                **SIG SAUER, INC.,**

                                                By its attorneys,

*/s/ Laura L. Carroll*
Laura L. Carroll (NH Bar No. 17444)
Eric G. J. Kaviar (*pro hac vice*)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel: 617-345-3000
Fax: 617-345-3299
lcarroll@burnslev.com
ekaviar@burnslev.com

### CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served *Defendant SIG Sauer, Inc.'s Responsive Claim Construction Brief* on all counsel of record via the Court's CM/ECF system, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated:  June 25, 2018                                            */s/ Laura L. Carroll*
                                                                                   Laura L. Carroll