UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Steyr Arms, Inc.

    v.                                  Civil No. 17-cv-483-JD
                                           Opinion No. 2020 DNH 027

SIG Sauer, Inc.

O R D E R

Steyr Arms, Inc. brought suit, alleging that Sig Sauer, Inc. is infringing U.S. Patent No. 6,260,301 ("'301 Patent"), which Steyr owns. The '301 Patent has a single claim that pertains to a pistol with a plastic housing and a single multifunction metal part. Steyr accuses Sig Sauer of infringing Claim 1 of the '301 Patent by manufacturing and selling its P250 and P320 pistols. Steyr moves for summary judgment on infringement, and SIG Sauer moves for summary judgment of noninfringement, asserting that its accused pistols do not infringe Claim 1.[1]

## Standard of Review

In a patent infringement case, the law of the Federal Circuit governs substantive issues of patent law, including issues pertaining to patent invalidity. UCP Int'l Co. Ltd. v.

---

[1] The parties also move for summary judgment on the invalidity defenses raised by SIG Sauer.

Galsam Brands Inc., 787 Fed. Appx. 691, 698 (Fed. Cir. 2019); 02 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1365 (Fed. Cir. 2006). For purposes of the procedural standard of review applicable to motions for summary judgment, however, the court applies the standard used by the First Circuit. Pharma Tech Solutions, Inc. v. LifeScan, Inc., 942 F.3d 1372, 1379-80 (Fed. Cir. 2019).

In this district, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). "A memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial." LR 56.1(b). "All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." Id.

Both parties respond to the opposing factual statements as if responding to a complaint. That is not the procedure provided by Local Rule 56.1. The court will not reject the filings as noncompliant, however, to avoid unnecessary delay.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Thomas v. Harrington, 909 F.3d 483, 490 (1st Cir. 2019). For purposes of summary judgment, the court considers the facts in the light most favorable to the plaintiff and draws all reasonable inferences in her favor. Roy v. Correct Care Solutions, LLC, 914 F.3d 52, 57 (1st Cir. 2019). "An issue is genuine if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case." Leite v. Bergeron, 911 F.3d 47, 52 (1st Cir. 2018) (internal quotation marks omitted). "A genuine issue of material fact only exists if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Town of Westport v. Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017); Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).

## Background

The '301 Patent is titled "Pistol, Whose Housing is Composed of Plastic" and describes a pistol that is made from both plastic, to reduce its weight, and metal, to accommodate

3

the forces that occur during firing. As stated in the patent, the "invention relates to a pistol which comprises a housing composed of plastic, a barrel slide (which contains a barrel and a breech and is guided in the longitudinal direction with respect to the housing) and a trigger mechanism." '301 Patent, col. 1, ll. 6-10. An object of the invention was "to provide a pistol construction which allows for the use of plastics technology to a large extent, and which provides high precision and simple assembly." Id., ll. 40-43.

The application that resulted in the '301 Patent was filed on August 13, 1999. As presented in the application, the patent had four claims, an independent claim and three dependent claims. The Patent Examiner rejected all four claims. After further proceedings, the applicant filed an amended application with a single claim, Claim 1. That claim was allowed, and the '301 Patent issued on July 17, 2001.

Claim 1 of the '301 Patent provides as follows:

> 1. A pistol comprising a housing; a barrel slide movably mounted on the housing for movement in a firing direction with respect to a barrel; and a trigger mechanism located, at least in part, within the housing, the improvement which comprises a multifunction metal part removably insertable within said housing, said multifunction metal part being provided with guides for the barrel slide and means for supporting the trigger mechanism, said multifunction metal part and housing are each provided with a transverse hole which receives a shaft for connecting the housing and the multifunction metal

4

part together, the housing has a rear wall which is
provided with a recess for receiving a projection on
the multifunction metal part the multifunction metal
part includes control means for locking said barrel in
the barrel slide.

In the claim construction order issued on June 5, 2018, the court construed the disputed limitations in Claim 1 as follows:

1. "Multifunction metal part"
   **A single, one-piece metal frame that serves multiple functions.**

2. "Means for supporting the trigger mechanism"
   **Function: To support the trigger mechanism and to connect it to the multifunction metal part.**
   **Structure: Pins and corresponding holes in the multifunction metal part, and equivalents thereof.**

3. "A transverse hole which receives a shaft for connecting the housing and the multifunction metal part together"
   **Transverse holes in the housing and in the multifunction metal part that are aligned to receive a shaft, which is not limited in shape, type, or kind, to connect the housing and the multifunction part together.**

4. "A rear wall which is provided with a recess for receiving a projection" is sufficiently clear that it does not require construction.

5. "Control means for locking said barrel in the barrel slide."
   **The function is to lock or contribute to lock the barrel in the barrel slide.**
   **The corresponding structure is a bridge that is an integral, inseparable part of the one-piece multifunction metal part and extends from the right-hand to the left-hand sides of the multifunction metal part, and equivalents thereof.**

The accused pistols in this case are SIG Sauer's P250 and P320 pistols. They each have plastic housings and metal frames.

They also have pins that are removable from the metal frames. Steyr contends that when the pins are assembled into the metal frames they serve the purpose of the '301 Patent limitation for a "control means for locking said barrel in the barrel slide."

## Discussion

Steyr moves for summary judgment in its favor that the accused pistols infringe Claim 1 of the '301 Patent. SIG Sauer moves for summary judgment that the accused pistols do not infringe the '301 Patent. Because it is dispositive, the court addresses SIG Sauer's motion first.

A patent holder who claims infringement bears the burden of proving infringement by a preponderance of the evidence. [Eli Lilly & Co. v. Hospira](), 933 F.3d 1320, 1328 (Fed. Cir. 2019). "To prove infringement, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." Id. Infringement must be proved by a preponderance of the evidence. Id.

An accused infringer may initially show that summary judgment of noninfringement is proper either by producing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to create a material

factual dispute as to any essential element of the patentee's case.  Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).  "[N]othing more is required [from the accused infringer] than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations."  Exigent Tech., Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1309 (Fed. Cir. 2006).  A motion for summary judgment of noninfringement will be granted if the accused infringer shows that no reasonable jury could find infringement.  Ottah v. Fiat Chrysler, 884 F.3d 1135, 1140 (Fed. Cir. 2018).

I.  Motion for Summary Judgment of Non-Infringement

SIG Sauer contends that Steyr cannot prove that either of the accused pistols infringes the '301 Patent.  Specifically, SIG Sauer contends that Steyer cannot show that the accused pistols infringe the limitation of a "multifunction metal part" or the means-plus-function limitation of a "control means for locking said barrel in the barrel slide."  Styer argues the accused pistols meet both limitations.

Once disputed claims are construed, infringement depends on whether "the accused product meets each limitation of the claim

7

as construed."  Amgen Inc. v. Amneal Phar. LLC, 945 F.3d 1368, 1375 (Fed. Cir. 2020).  "For literal infringement, the patentee must prove that the accused product meets all the limitations of the asserted claims; if even one limitation is not met, there is no literal infringement."  E.I. du Pont De Nemours & Co. v. Unifrax I LLC, 921 F.3d 1060, 1073 (Fed. Cir. 2019).  "Even when an accused product does not meet each and every claim element literally, it may nevertheless be found to infringe the claim 'if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.'"  Intendis GMBH v. Glenmark Pharms. Inc., USA, 822 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)).

    A.   Multifunction Metal Part

The first disputed limitation of the '301 Patent, "a multifunction metal part," was construed to mean "[a] single, one-piece metal frame that serves multiple functions."  The accused pistols have one-piece metal frames that serve multiple functions.  Based on that much of Claim 1, Steyr contends the accused pistols meet the multifunction metal part limitation.

SIG Sauer, however, asserts that the last limitation in Claim 1, "the multifunction metal part includes a control means

8

for locking said barrel in the barrel slide," further restricts the limitation of "a multifunction metal part." The structure of the control means was construed to be "a bridge that is an integral, inseparable part of the one-piece multifunction metal part." The structure in the accused pistols that Steyr has identified as the "control means" is a removable pin that must be assembled to be part of the multifunction metal part. The parties agree that the removable pin in the accused pistols is not "an integral, inseparable part of the one-piece multifunction metal part."

In response, Steyr argues that because "control means" is a separate limitation in Claim 1, the construction of "control means" cannot be considered for purposes of determining infringement of the "multifunction metal part" limitation.[2] Steyr cites no legal authority to support its piecemeal theory. Under Steyr's theory, the multifunction metal part claimed in the '301 Patent could have both a control means that is a separable part, under the first limitation, and also require the

---

[2] Steyr also argues that because the court did not consider SIG Sauer's argument during claim construction that removable pins could not be control means, the court found that the pins could be control means and that the multifunction metal part need not include a bridge. That is not what happened. The court simply declined to address an infringement argument in the context of claim construction. The current motions for summary judgment are the appropriate context to consider infringement arguments.

9

control means to be inseparable from the metal part, under the last limitation. Steyr's theory would remove the limitation of an integral and inseparable control means from Claim 1 and would render its limitations contradictory.

Claim 1 of the '301 Patent claims a multifunction metal part which is a single, one-piece metal frame that serves multiple functions. The one-piece metal part includes a bridge, which is an integral, inseparable part of the one-piece multifunction metal part, that locks or contributes to lock the barrel in the barrel slide. Because the accused pistols do not include a bridge that is an integral, inseparable part of the one-piece multifunction metal part, they do not literally infringe Claim 1 of the '301 Patent.

### B. Means-Plus-Function Limitation

Steyr argues that the pins in the accused pistols infringe the control means limitation of Claim 1 under the means-plus-function analysis of 35 U.S.C. § 112(6).[3] "'Literal infringement of a means-plus-function limitation requires that the relevant structure in the accused device (1) perform the identical function recited in the claim <u>and</u> (2) be identical or equivalent

---

[3] By extension, if the pins are equivalent to the control means, the pistols would also infringe the first limitation under the doctrine of equivalents.

10

to the corresponding structure in the specification.'" Tomita Techs. USA, LLC v. Nintendo Co., Ltd., 681 F. App'x 967, 970 (Fed. Cir. 2017) (quoting Gen. Protecht Grp., Inc. v. Int'l Trade Comm'n, 619 F.3d 1303, 1312 (Fed. Cir. 2010)). The determination of whether the relevant structure in the accused device is equivalent to the corresponding structure claimed in the patent, which is known as structural equivalence, requires an application of the doctrine of equivalents. Warner-Jenkinson Co., 520 U.S. at 28.

Steyr relies on structural equivalence, arguing that the pin and the bridge perform the identical function in the same way with the same result. See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1159, 1170 (Fed. Cir. 1999). Equivalence does not exist if "the way the accused product performs the function or the result thereof is 'substantially different' from the way or result of the subject patent." Tomita Tech., 681 F. App'x at 971 (quoting Odetics, 185 F.3d at 1267). Under the "all elements rule," however, each limitation in a claim is material and the doctrine of equivalents cannot be used to show infringement if the result would eliminate one of the elements of the claim. DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1016-17 (Fed. Cir. 2006).

In this case, the function of the control means is to lock or contribute to lock the barrel in the barrel slide.[4] The corresponding structure is a bridge "that is an integral, inseparable part of the one-piece multifunction metal part." Steyr contends that the removable pins used in the accused pistols to lock the barrel in the barrel slide are structurally equivalent to the bridge that is an integral, inseparable part of the multifunction metal part in Claim 1.

At SIG Sauer points out, removable and inseparable structures are substantially different. If the removable pins were deemed to be structurally equivalent to the inseparable bridge in Claim 1, that equivalence would eliminate the element that the control means must be an integral and inseparable part of the multifunction metal part. That is an impermissible use of structural equivalence. Warner-Jenkinson, 520 U.S. at 29.

Therefore, taking the facts in the light most favorable to Steyr, there is no dispute that the accused pistols do not infringe Claim 1 of the '301 Patent.

---

[4] Although the parties dispute whether the pins and the control means have the identical function, the court need not address function because the other parts of the analysis are resolved against Steyr.

II. Steyr's Motion for Summary Judgment of Infringement

Steyr moved for summary judgment that the accused pistols infringe Claim 1 of the '301 Patent. For the reasons stated above, Steyr has not carried its burden to show infringement.

III. Invalidity

Steyr moved for summary judgment that the '301 Patent is valid, addressing SIG Sauer's affirmative defense of invalidity and unenforceability. SIG Sauer moved for summary judgment on its affirmative defense that the '301 Patent is invalid under § 112 because it lacks a sufficient written description of what it means to lock the barrel in the barrel slide. Because the court has determined that the accused pistols do not infringe the '301 Patent, it is unnecessary to consider the affirmative defenses raised by SIG Sauer.

## Conclusion

For the foregoing reasons, SIG Sauer's motion for summary judgment of noninfringement (document no. 65) is granted. Steyr's motion for summary judgment of infringement (document no. 63) is denied.

The motions for summary judgment on patent validity (documents nos. 62 and 64) are terminated as moot.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                      Joseph A. DiClerico, Jr.
                                      United States District Judge

February 25, 2020

cc:   Counsel of Record.